U.S. Bankruptcy Court
District of Idaho
Filed: December 10, 2004
at 1:30 p.m.
By: JC

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF IDAHO

|  |  |  |
|---|---|---|
| IN RE | ) | |
| | ) | |
| **GARY RISNER and** | ) | **Case No. 04-02310** |
| **MARIA RISNER,** | ) | |
| | ) | |
| Debtors. | ) | **MEMORANDUM OF DECISION** |
| | ) | |
| ———————————— | ) | |

## PROCEDURAL BACKGROUND

Gary and Maria Risner ("Debtors") filed a voluntary petition for chapter 7

relief on June 29, 2004.  Doc. No. 1.  The chapter 7 trustee filed a "no asset"

report.  Doc. No. 6.  The time for objecting to discharge expired on September 28,

and Debtors' discharge was entered on October 4, 2004.  Doc. No. 23.

Debtors have filed several motions asserting that their creditors and/or their

creditors' collection agents violated the automatic stay of § 362(a) between the

filing on June 29 and their discharge on October 4.[1]  In the motion presently before

the Court, Debtors target creditor Nampa Radiologists, P.A. ("NR").  *See* Doc. No.

---

[1]  *See* § 362(a) (stay arises upon filing); § 362(c)(2)(C) (stay terminates as to debtor upon
discharge).

MEMORANDUM OF DECISION - 1

29.  Debtors' motion sought damages, attorney's fees and costs, and punitive

damages.  *Id.*

Debtors filed a previous motion for sanctions against NR and scheduled it

for an October 4, 2004 hearing.  *See* Doc. Nos. 13, 15.  NR did not appear at the

October 4 hearing.  Debtors submitted that matter upon (a) the Court's files, (b)

Exhibit 3 introduced at the hearing, and (c) the hearing testimony of Maria Risner.

The Court took the motion under advisement and, upon its review of the record,

determined that Debtors' service of the motion did not satisfy the requirements of

Fed. R. Bankr. P. 7004(b)(3).  On October 5, 2004, it denied the motion without

addressing the merits.  *See* Doc. No. 26.

On October 7, 2004, Debtors filed a new motion against NR, properly

served it, and set a hearing for November 1.  *See* Doc. Nos. 29, 30.  NR responded,

and appeared at the November 1 hearing on the contested matter.

At that hearing, NR offered in lieu of testimony the affidavits of Steven

Hippler, NR's attorney, and Paul Dewitt, the president of Practice Management,

Inc. ("PMI"), the company that handles NR's billings.  *See* Doc. Nos. 33, 34.

Debtors, through their attorney Kelly Beeman, accepted all the factual assertions

found in those affidavits without dispute and waived cross examination.[2]

---

[2]  NR was prepared to present testimony at the November 1 hearing in support of its
objection to Debtors' second motion.  However, due to Debtors' agreement, the affidavits suffice.
*Compare* Fed. R. Bankr. P. 9014(d) (stating that "[t]estimony of witnesses with respect to
(continued...)

MEMORANDUM OF DECISION - 2

AO 72A
(Rev. 8/82)

Debtors did not present any evidence at the November 1, 2004 hearing. Instead, Mr. Beeman indicated they would rely on the testimony and exhibit introduced at the October 4 hearing on their previous motion.

At the November 1 hearing, Mr. Beeman orally withdrew Debtors' claim for punitive damages.[3] The parties presented legal arguments on the remaining issues and the matter was taken under advisement. To the extent required by rule, the following constitutes the Court's findings of fact and conclusions of law.

**FACTS**

When Debtors' bankruptcy was filed on June 29, 2004, they listed creditor "Nampa Radiologists, P.A." at an address of "P.O. Box. 9649, Boise, ID, 83707." Doc. No. 1 at schedule F. The Bankruptcy Noticing Center's ("BNC") certificate of service reflects first class mail service on NR on July 2, 2004, using an address of "P.O. Box. 9649, Boise, ID 83707-4649".

Although addressed to NR, the post office box was actually that of NR's billing agent, PMI. Doc. No. 33 at 1-2.[4] When PMI received notice of Debtors'

---

[2](...continued)
*disputed* material factual issues shall be taken in the same manner as testimony in an adversary proceeding.") (emphasis added).

[3] Although he withdrew the claim at hearing, Mr. Beeman explicitly threatened pursuit of punitive damages in an October 22 letter to Mr. Hippler. *See* Doc. No. 34 at Ex. C. NR was therefore prepared to address the factual matters related to that issue. Mr. Beeman was unprepared to proceed on this contention.

[4] PMI explained that it places its phone number and address on its clients' billings "so
(continued...)

MEMORANDUM OF DECISION - 3

AO 72A
(Rev. 8/82)

bankruptcy, it immediately reviewed Debtors' accounts and "zeroed out" all outstanding balances. Unfortunately, a pre-petition medical procedure was still being reviewed by NR to determine the proper billing code and possible insurance coverage. This charge had not yet posted to Debtors' account. NR's determination was made after PMI received notice of Debtors' bankruptcy, reviewed all Debtors' accounts and zeroed out all balances. Once that determination was made, the charge (of $100.00) was posted and a bill was generated and sent to Debtors in August. Doc. No. 33 at 2-3. PMI sent another reminder billing statement in early September. *Id* at 3.

Debtors' response to these two bills was to file a § 362(h) motion. Doc. No. 13. Mr. Beeman made no attempt to contact the creditor by telephone or letter to alert the creditor to the stay violation, determine why the creditor had so acted, request that the bills cease, or otherwise resolve the matter.

In mid-September, a billing clerk at PMI received Debtors' first motion regarding violation of the stay. The clerk did not understand the significance of this pleading, and concluded it simply identified that a bankruptcy had been filed. He therefore reviewed Debtors' accounts and, consistent with policy, zeroed out the same *including* the charge at issue. Doc. No. 33 at 3. No further actions were

---

[4](...continued)
that inquiries are addressed to PMI to insure a centralized and accurate response to billing inquiries, complaints and notices of bankruptcies." Doc. No. 33 at 2.

MEMORANDUM OF DECISION - 4

taken by PMI regarding Debtors' first motion, and no further collection efforts were made.

When Debtors properly served their second motion on NR through its registered agent, NR promptly responded by contacting PMI's president, Mr. Dewitt, who then contacted Mr. Hippler. NR and PMI, through Mr. Hippler, attempted to negotiate a resolution with Mr. Beeman.

The conversation, initiated by Mr. Hippler, was the first contact Mr. Beeman ever had with NR, PMI or any attorney for them. It is undisputed that, had Debtors or Mr. Beeman called the billing agent and indicated a bankruptcy existed, "the bill would have immediately been zeroed out, an apology made, and any damage rectified." Doc. No. 33 at 5. Not only was this assertion made by Mr. Dewitt and not contested, its accuracy was demonstrated through PMI's response to Debtors' first motion. *Id.* at 4-5.

## DISCUSSION AND DISPOSITION

A stay violation occurred. But the Court will not award damages, fees or costs, nor impose other sanction, for that violation. This may seem incongruous, but it is a conclusion driven by several factors.

### A.    Creditors should not violate the stay, and face consequences if they do

This Court has previously noted that "the stay is one of the fundamental debtor protections under the Code, and that it 'stops all collection efforts.'" *In re*

MEMORANDUM OF DECISION - 5

*Aughenbaugh*, 02.4 I.B.C.R. 157, 158 (Bankr. D. Idaho 2002) (quoting *Franchise*

*Tax Bd. v. Roberts (In re Roberts)*, 175 B.R. 339, 343 (9th Cir. BAP 1994)).

> The reach of the automatic stay is broad. It prohibits any act
> taken against the debtor or to recover a claim against the debtor. The
> stay requires the creditor to maintain the status quo ante and to
> remediate acts taken in ignorance of the stay.

*Id.* (quoting *Roberts*); *see also Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210,

1214 (9th Cir. 2002) ("The scope of protections embodied in the automatic stay is

quite broad, and serves as one of the most important protections in bankruptcy

law."[5]); *In re Wiersma*, 03.1 I.B.C.R. 42, 44 (Bankr. D. Idaho 2003) ("Respect by

all involved for the automatic stay is critical to the fair and effective functioning of

the reorganization process.").

The protections embodied in the stay are enforced through § 362(h), which

provides:

> (h)   An individual injured by any willful violation of a stay
> provided by this section shall recover actual damages, including costs
> and attorneys' fees, and, in appropriate circumstances, may recover
> punitive damages.

For injured debtors to recover under § 362(h), the creditors' stay violations

must be willful. Under the case law, it is clear that once a creditor or actor learns

or is put on notice of a bankruptcy filing, any actions intentionally taken thereafter

---

[5]   *Eskanos & Adler* states: "Consistent with the plain and unambiguous meaning of the
statute, and consonant with Congressional intent, we hold that § 362(a)(1) imposes an affirmative
duty to discontinue post-petition collection actions." 309 F.3d at 1215.

MEMORANDUM OF DECISION - 6

are "willful" within the contemplation of § 362(h). *Eskanos & Adler*, 309 F.3d at

1215; *In re Jacobson*, 03.2 I.B.C.R.119 (Bankr D. Idaho 2003). The question is

thus whether the actor intended the action, not whether the actor intended to

violate the stay. *Eskano & Adler*, 309 F.3d at 1214-15. *Associated Credit Servs.,*

*Inc. v. Campion (In re Campion)*, 294 B.R. 313 (9th Cir. BAP 2003), states:

> There need be no proof of specific intent to violate the stay or to injure.
> To the contrary, a good faith belief that the stay is not being violated "is
> not relevant to whether the act was 'willful' or whether compensation
> must be awarded."

294 B.R. at 316 (footnote omitted); *see also Jacobson*, 03.2 I.B.C.R. at 121

("Specific intent to violate the stay is not a required element in finding a willful

violation.") (citing *Goichman v. Bloom (In re Bloom)*, 875 F.2d 224 (9th Cir.

1989)); *Aughenbaugh*, 02.4 I.B.C.R. at 163.

The decisions of this Court, including those referenced above, amply prove

that stay violations are not tolerated, and that the Court is not adverse to imposing

serious sanction for transgression.[6] Why, then, are no sanctions warranted here?

The answer is found in a close review of the conduct of the creditor and its

agent, and of the conduct of Debtors and their counsel.

---

[6] *See, e.g., In re Andrus*, 04.3 I.B.C.R. 137, 2004 WL 2216493 (Bankr. D. Idaho 2004)
(actual damages of $850.30, attorney's fees and costs of $6,590.40, and punitive damages of
$10,000.00); *In re Daniels*, 316 B.R. 342 (Bankr. D. Idaho 2004) (actual damages of $135.00,
attorney's fees and costs of $2,850.00, punitive damages of $1,350.00).

MEMORANDUM OF DECISION - 7

## B.   Who violated the stay, and how

PMI admits that it sent two separate post-petition bills to Debtors regarding a prepetition debt owed to NR. While Mr. Dewitt avers that "in no way did PMI act knowing that a bankruptcy existed when a bill was generated and sent subsequent to the filing of a bankruptcy," the evidence is to the contrary. PMI admits receiving the BNC notice of Debtors' bankruptcy; in fact, it zeroed out all open balances on Debtors' account in response to that notice.

PMI is actually arguing that it failed to appreciate that the bankruptcy encompassed the charge that was determined, post-bankruptcy, not to be covered by Debtors' medical insurance. But the post-petition determination did not vary the prepetition nature of the $100.00 charge.

PMI was already on notice of Debtors' June 29, 2004 bankruptcy when it generated the two bills on this charge. "Once a creditor knows of the existence of the automatic stay, forgetting about it does not erase the knowledge." *Campion*, 294 B.R. at 317.[7] Therefore, PMI willfully violated the automatic stay and could

---

[7] It is clear that PMI has a procedure in place to deal with bankruptcy filings, and that its system is largely effective. However, it also appears that once an initial review of a debtor's accounts has been made and those accounts zeroed out, the file is not tagged or otherwise identified in a way to prevent later postings and billings on other *prepetition* claims in violation of the stay. Mr. Dewitt's affidavit acknowledges that there have been other instances, like that here, where a prepetition charge has been erroneously posted to a zeroed out account of a debtor. *See* Doc. No. 33 at 4. The fact that such mistakes are possible leaves PMI open to liability for stay violation, even if the error could be promptly rectified upon inquiry and even though actual damages might be minimal. The point is that PMI's intent not to violate the stay, and its institution of processes to minimize such violations, do not innoculate it from liability. *Campion*,
(continued...)

MEMORANDUM OF DECISION - 8

be liable for any damages adequately proven by Debtors.

Debtors, however, did not bring their motion alleging "willful violation" against PMI; they brought both their first and second § 362(h) motions against NR.

NR never received direct notice of the bankruptcy. While the BNC certificate of service lists NR, the evidence before the Court demonstrates that the entity receiving mail at the address listed was PMI, not NR. *See* Doc. No. 33 at 2.[8]

One might expect NR to argue that, as it was directly unaware of the bankruptcy, it could not have willfully violated the stay. NR did not do so. It appears to appreciate that notice went to its selected and designated collection and account servicing agent, which was granted responsibility for the account. General principles of agency (though never argued or briefed by Debtors) support the idea that NR is liable, under the facts of this case, for the conduct of its billing agent.[9]

--------

[7](...continued)
294 B.R. at 317-18.

[8] *See also* Doc. No. 33 at 4 (stating that Debtors' second, properly served § 362(h) motion was NR's "first indication of any issue regarding bankruptcy or regarding an alleged stay violation" and that "Nampa Radiologists had absolutely no . . . knowledge of the bankruptcy prior to its service if [*sic*] the motion for sanctions that is currently pending that was served by certified mail to its registered agent on October 7, 2004.").

[9] This Court has previously recognized a split of authority on whether a creditor-principal should legally be responsible for the willful stay violation of its collection agent by virtue of their agency relationship. *See In re McCain*, Case No. 03-04624, Doc. No. 42 (Mem. Dec.) at 6 (Bankr. D. Idaho Aug. 19, 2004) (comparing *In re Withrow*, 93 B.R. 436, 438 (Bankr. W.D.N.C. 1988) and *In re Atlas Mach & Iron Works, Inc.*, 239 B.R. 322, 333-35 (Bankr. E.D. Va. 1998)). Mr. Beeman should have been aware of this issue, as he was Debtors' counsel in *McCain*.

MEMORANDUM OF DECISION - 9

The Court concludes, particularly given NR's implicit agreement,[10] that NR is properly subject to the § 362(h) motion.  Even so, there are other problems with Debtors' second motion which preclude relief against NR.

### C.    Actual damages must be suffered, and proved

In order to recover under § 362(h), debtors are required to prove their actual damages.  *Jacobson*, 03.2 I.B.C.R. at 121 (stating that the "amount of any actual damages sought pursuant to § 362(h) must be proved" and that the debtor bears the burden of proof).[11]  The Court concludes that the only evidence properly before it on the second motion is that presented by NR through the unopposed affidavits of Mr. Dewitt and Mr. Hippler.

Debtors did not present any evidence at the November 1 hearing.  Debtors instead relied on the testimony of Mrs. Risner and the exhibit presented at the October 4 hearing on their *first* motion against NR.

NR objects to the Court considering that evidence since it was not present at the hearing to cross examine the witness or otherwise participate.  NR's absence from the first hearing was through no fault of its own; NR was not present because it was not properly served in accord with Rule 7004.  *See* Doc. No. 26 (Mem.

---

[10]  *Accord McCain*, Doc. No. 42 at 6 (finding creditor liable for acts of collection agent in absence of objection or "effective opposition" by creditor).

[11]  *See also Eskanos & Adler, P.C. v. Roman (In re Roman)*, 283 B.R. 1, 8-9 (9th Cir. BAP 2002) (injury under § 362(h) means actual damages, and requires proof of an actual harm or loss suffered).

MEMORANDUM OF DECISION - 10

Case 04-02310-TLM    Doc 42    Filed 12/10/04    Entered 12/13/04 12:18:00    Desc
Converted from BANCAP    Page 11 of 20

Dec.) at 5-6.  The Court cannot consider testimony and exhibits admitted at

hearing on a prior, improperly served motion when the creditor was not present

due to such improper service and now objects.  *Accord Beneficial Cal., Inc. v.*

*Villar (In re Villar)*, No. 04-1081, 2004 WL 2587803 (9th Cir. BAP Oct. 20, 2004)

(failure to properly serve in compliance with Rule 7004 violates due process rights

of adverse party).[12]

   Therefore, the Court has no evidence of Debtors' actual damages, and

cannot award any under § 362(h).  *Accord McCain*, Doc. No. 42 at 7 (refusing to

award damages absent testimonial or other competent proof).

### D.    Attorney's fees and costs alone may constitute damages, but not here

   It is true that under § 362(h), a debtor need not prove actual damages apart

from his attorney's fees, which are alone recoverable.  *Jacobson*, 03.2 I.B.C.R. at

121 (citing *Eskanos & Adler*, 309 F.3d at 1215-16).  However, in this case, there

are problems with awarding such damages.

   There is no affirmative evidence regarding attorney's fees and costs.  There

is no testimony or affidavit from Mr. Beeman addressing his fees, nor is there any

other itemization of time spent by him.  There exists no adequate evidentiary basis

for a finding of actually and reasonably incurred fees in the litigation with NR.

---

   [12] Upon pointed questioning, Mr. Beeman ultimately admitted the Court should not
consider evidence admitted at a hearing where the opposing side was not present because it had
not been properly served.

MEMORANDUM OF DECISION - 11

(Rev. 8/82)

*Accord McCain*, Doc. No. 42 at 8. The Court is left with Mr. Beeman's assertion at the October 4 hearing that there was a $300.00 fee component to Mrs. Risner's damages consisting of two hours of his time at a rate of $150.00 per hour.[13]

Both Mr. Beeman and Mr. Hippler generally debated the issue of reasonable attorney's fees on November 1, even *sans* evidence. Given the nature of this case and several others in which Mr. Beeman has prosecuted (or filed and then settled) § 362(h) motions, the Court feels compelled to comment.

### 1.   The apparent charges for the generation of multiple, form § 362(h) motions are unsupported and facially excessive

NR contends that Mr. Beeman's § 362(h) motions are essentially boiler plate forms, requiring little time to prepare. The Court agrees. In this case alone, Mr. Beeman filed four motions for sanctions regarding alleged violations of the automatic stay, not including the re-served NR motion or an "amended" motion against one of the other three creditors.[14] In comparing the motion presently before the Court, Doc. No. 29, with the others, the Court easily concludes that "form pleadings" were used. The basic structure and wording of the pleadings are identical. In fact, in some places, the form was not even modified to correctly

---

[13] The Court is not persuaded that Mr. Beeman's performance in this case deserves compensation at $150.00 per hour. However, as no fees will be award, the Court will not further address the question of reasonable rate.

[14] *See* Doc. No. 7 (motion re: Saltzer Medical); Doc. No. 10 (motion re: Transworld Systems/American Mint); Doc. No. 13 (first motion re: NR); Doc. No. 16 (motion re: Shell Oil). *See also* Doc. No. 19 (amended motion re: Saltzer Medical); Doc. No. 29 (second motion re: NR).

MEMORANDUM OF DECISION - 12

identify the targeted creditor. *See* Doc. Nos. 13, 16 and 29 at ¶ c (each stating, erroneously, that the motion was served on creditor "American Mint"). The attorney time necessary to generate such pleadings, even if their preparation and filing were justified, is minimal.

There is further support for the idea that these pleadings are not drafted with an eye to the specific conduct at issue, nor reflect much particularized attention to a given creditor's acts. For example, a "form" allegation is found in each motion, where Mr. Beeman writes that his debtors "believe on information that Creditor . . . has no procedure in place to identify bankruptcy cases and ensure observance of the automatic stay." *See, e.g.,* Doc. Nos. 7, 10, 13, 16, 29 at 2, ¶ g.

Questioning of Mr. Beeman on November 1 established that there was no investigation or any other "information" upon which this allegation was based. Rather, he felt comfortable signing the pleadings making the assertion (notwithstanding the requirements imposed on him by Fed. R. Bankr. P. 9011) based solely on the fact that a post-petition bill was mailed by the creditor (*i.e.*, a bill was issued; *ergo* there was no procedure).[15] The frailty of this sort of *res ipsa loquitor* contention was illustrated by the evidence produced by NR and PMI in this case. PMI had such a procedure in place, though due to the specific

---

[15] This form contention exists not to establish a violation of stay or debtor's damages. Its presence is designed to present a basis for seeking punitive damages. This makes even more disturbing the lack of pre-filing inquiry, investigation, or other basis for the certification under Rule 9011 that there was evidentiary support for the allegation.

MEMORANDUM OF DECISION - 13

circumstances surrounding the post-petition determination of insurance coverage
of the subject charge, that procedure failed.

Thus, it does not appear that significant amounts of time were invested in
generating these motions, supporting affidavits and service certificates. Certainly
it does not appear that the two hours of time Mr. Beeman mentioned was
required.[16]

### 2.   The strategy and course of conduct undertaken impeaches the idea of reasonableness

Even if the Court were to accept the idea that it took some amount of Mr.
Beeman's time to generate the form pleadings and bring the motion before the
Court, the analysis would not end there. The Court must also evaluate the
*reasonableness* of claimed attorney's fees in its assessment of § 362(h) damages.

The question of reasonableness here relates to the decision to file a motion
and commence a contested matter for damages (indeed, one for *punitive* damages)

---

[16] This is not the only case in which Mr. Beeman has filed such motions. As the Court
has noticed in several cases before it, the two hour figure has become something of a "standard"
charge. *See, e.g., In re Rose Motley*, Case No. 04-03116, Doc. No. 10 at 2; Doc. No. 13 at 2 (both
stating, in regard to different creditors in form § 362(h) motions, "My Attorney, Kelly I. Beeman,
informs me that he spent two (2) hours researching, preparing for and appearing in this case");
*but see id.*, Doc. No. 20 at 2 (claiming one hour, not two). Perhaps this is a result of Mr. Beeman
receiving $300.00 for two hours of work in *McCain*, when the previously denied motion was
reasserted. *See McCain*, Doc. No. 54 (Sum. Ord.) at 4. There is, however, no presumptive fee
for presenting § 362(h) matters. The *actual* time spent must be established, through competent
evidence in each case and *viz* each creditor alleged to have violated § 362(a), and that time and
the fees charged must be shown to be reasonable. *See id.*, Doc. No. 42 at 8.

MEMORANDUM OF DECISION - 14

based solely on the receipt of two bills in the mail on a $100.00 account.[17]  More to

the point, it relates to the decision to commence litigation without ever contacting

the creditor to see if the matter could be promptly and inexpensively resolved and

the bills stopped.

If the attorney's fees "would not have been incurred but for the bringing of

an [unnecessary] motion[,]" the Court can decline to award any attorney's fees.

*See McHenry v. Key Bank (In re McHenry)*, 179 B.R. 165, 168-69 (9th Cir. BAP

1995).[18]  *McHenry* was one of the earliest cases to note that the automatic stay "is

intended to be a shield protecting debtors and their estates, and should not be used

as a sword for their enrichment." *Id.* at 169.[19]

---

[17] The assertion of a right to punitive damages is not adequately supported by the
allegations of the form motion.  Evidence of "reckless or callous disregard of the law", of
"malicious, wanton or oppressive" conduct, or of "egregious, intentional misconduct" is required
to support an award of punitive damages. *See Andrus*, 04.3 I.B.C.R. at 145.  In the present case,
there was no indication that Mr. Beeman had a cogent basis for making the allegation, much less
any indication that he was prepared to meet the evidentiary burden to prove it.

[18] In *McHenry*, a creditor secured by debtors' vehicle received, but misplaced, debtors'
bankruptcy notice.  An employee of the creditor called debtors to discuss their delinquent car
payments.  Debtors advised the caller of the bankruptcy and referred him to their attorney.  Two
days later, the attorney was called by the creditor.  The attorney confirmed the existence of the
filing, and advised the creditor that the debt would not be reaffirmed and the vehicle would be
surrendered.  After learning that the vehicle would be surrendered, creditor contacted debtors, set
up a time to collect the vehicle, and finally repossessed the vehicle.  Debtors' counsel thereafter
brought a § 362(h) motion seeking fees, actual damages of $5,000.00 and punitive damages of
$15,000.00.  Bankruptcy Judge Alfred C. Hagan, writing for the BAP, affirmed the court's
determination that no damages, much less punitive damages, were warranted.  *McHenry*
distinguished the cases relied on by debtors since, in those cases, "the bringing of the motion . . .
may have been necessary to stop the continuing stay violations, thus justifying an award of
attorney's fees."  179 B.R. at 168.

[19] In *Eskanos & Adler, P.C. v. Roman (In re Roman)*, 283 B.R. 1 (9th Cir. BAP 2002),
(continued...)

MEMORANDUM OF DECISION - 15

The concept of reasonableness was revisited in *Eskanos & Adler, P.C. v. Roman (In re Roman)*, 283 B.R. 1 (9th Cir. BAP 2002). The BAP there sustained the bankruptcy court's conclusion that debtor incurred $5.00 in actual damages (the "travel cost" incurred by the debtor in going to her lawyer's office). *Id.* at 8-9. The Panel then considered the bankruptcy court's award of $1,000.00 in fees. It "endorse[d] the use of the principles used in § 330 as a guide for awarding attorneys' fees under § 362(h)." *Id.* at 11. This requires, among other things, that the services be "actually" performed and that the charge therefore is "reasonable" in amount. *See* § 330(a)(1), (3).

*Roman* expressed "dismay" at the "cottage industry of precipitous section 362(h) litigation" where the moving party's only claimed injuries are his fees incurred in writing the motion. *Id.* at 11-12 (quotation marks omitted). It further stated:

> Consequently, there is also a consensus in the case law that, in determining reasonable damages under § 362(h), the bankruptcy court must examine whether the debtor could have mitigated the damages.
> . . .

---

[19](...continued)
discussed further in the text *infra*, the BAP summarized *McHenry* in these terms:

> Basically, in *McHenry* the debtors did not have *any* actual damages or injury due to the stay violation because their attorneys' fees were incurred in the filing of an unnecessary motion for sanctions. This finding was more in the nature of a reasonableness determination, which as we discuss below, is the standard for awarding attorneys' fees as damages.

*Id.* at 10 n.10.

MEMORANDUM OF DECISION - 16

> Courts especially scrutinize cases where the debtor's only
> injuries are those incurred in litigating the motion for sanctions, and
> where there exist no circumstances warranting punitive damages.

*Id.* at 12. The Panel found that, while the debtor was injured by the conduct of the

creditor, "[she] and her attorney were not entirely blameless" and "could have

merely telephoned [the creditor] and attempted to negotiate a reasonable

settlement." *Id.* at 13.[20]

While it is incumbent upon creditors to respect the automatic stay and cease

collection activity once they are made aware of a bankruptcy filing, debtors and

their attorneys cannot use a creditor's harmless error to profit. The Court is

required only to compensate any actual, proven damages and reasonable attorney's

fees. When a creditor's conduct is not particularly egregious and the debtor makes

no effort to correct the problem before racing into Court, there is no absolute

requirement that sanctions be imposed.

The Court must evaluate the costs and fees claimed and determine if those

expenses could have been mitigated. *Roman*, 283 B.R. at 12. It has been made

sufficiently clear here that any brief communication by Debtors or Mr. Beeman

with PMI would have led to the prompt and full resolution of the matter. There

would have been no need to generate any pleadings in this case or attend any

---

[20] *Roman* notes that "[t]he bankruptcy court took all of this into consideration when it
adjusted Debtor's fee request of $2,000, and limited the award to only $1,000 in attorneys' fees."
*Id.*

MEMORANDUM OF DECISION - 17

hearings.[21]

Mr. Beeman apparently instructs his debtor clients to notify him of any post-petition collection efforts. That is fully appropriate. But when bills or telephone calls are received by his debtors, Mr. Beeman appears to elect to litigate rather than simply making a call or writing a letter and solving the problem.[22] This approach does not serve his clients' best interests and, ultimately, it serves mostly to generate fees.[23] The Court need not reward such behavior.

The Court has and will continue to impose sanctions for § 362 violations when there is sufficient cause and competent evidence. This case does not present such a situation.

_____

[21]  Had this approach been taken, the "reasonable" fee would be for the time involved in two brief phone calls: one from Debtors to Mr. Beeman and the other from Mr. Beeman to PMI. At Mr. Beeman's suggested hourly rate of $150.00, that would generate a fee of $30.00 to $45.00.

[22]  The Court, of course, has no idea how many times Mr. Beeman might have solved stay violation questions in this simpler, more expedient and cost effective way. It hopes that motions like that now before it are the exception and not the rule.

However, the evidence in this present case indicates no communication was made with NR or PMI before commencing litigation. In fact, in none of the § 362(h) motions in this case, or in those filed in other cases before this Judge, is there any allegation that such communications were made but for whatever reason proved unsuccessful. And, in questioning by the Court in these matters, Mr. Beeman has taken the position that he is not required to make such contact. His feeling is that the stay requires the creditor to behave and, if not, he is in essence free to "fire [off the motion] first and ask questions later."

[23]  Even if initially driven by principled concern for debtors' rights and the protective function of § 362, the number of motions (far more than advanced by any other practitioner before the Court) and the regularity of vacated hearings on those motions due to "settlements" with the creditors, support the idea that the motivation has become primarily an economic one. That such settlements are monetary, with Mr. Beeman and his clients splitting the proceeds, was admitted by Mr. Beeman during questioning.

MEMORANDUM OF DECISION - 18

**CONCLUSION**

Debtors' motion, Doc. No. 29, will be denied.  An appropriate order will be

entered.

Dated this 10th day of December, 2004.

TERRY L. MYERS
CHIEF U.S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION - 19

<u>CERTIFICATE OF SERVICE</u>

I, the undersigned, hereby certify that I served by the method indicated below, a true copy of the document to which this certificate is attached, to the following named person(s) at the following address(es), on the date shown below:

DATED: December 10, 2004

Case No.  04-02310 (Gary Risner)

Office of the U.S. Trustee
MK Central Plaza
720 Park Blvd., Suite 220
Boise, ID 83712
jeff.g.howe@usdoj.gov
gary.mcclendon@usdoj.gov
  ☐ U.S. Mail   ☐ Facsimile   ✓ Email

Kelly I. Beeman
Attorney at Law
710 ½ W. Franklin, Suite 201
Boise, ID 83702
assurance@beemangroup.org
  ☐ U.S. Mail   ☐ Facsimile   ✓ Email

Steven J. Hippler
GIVENS PURSLEY
P.O. Box 2720
Boise, ID 83701-2720
  ✓ U.S. Mail   ☐ Facsimile   ☐ Email

Richard E. Crawforth
P.O. Box 190129
Boise, ID 83709
rcrawforth@cableone.net
  ☐ U.S. Mail   ☐ Facsimile   ✓ Email

*Jo Ann B. Canderan*

Jo Ann B. Canderan
Judicial Assistant to Judge Myers

Note to Email service: A PDF version of the above decision/order was electronically transmitted to the parties indicated above. Email service is provided as a courtesy only upon request of a party. To review an electronic image of the original of this document, or to subscribe for email service of future decisions/orders from the Bankruptcy Judge, please access the Court's Internet web site, www.id.uscourts.gov.

MEMORANDUM OF DECISION - 20